## BURDICK *v.* HUNT ET AL.[*]

From the Marion Common Pleas.

*E. W. Kimball,* for appellant.

*J. Hanna* and *F. Knefler,* for appellees.

[*]May term, 1871.

———————————•———————————

## BURDICK *v.* HUNT ET AL.

BILL OF EXCEPTIONS.—*Documentary Evidence.*—Parties cannot, by agreement in writing, authorize the clerk, in making up a transcript for the Supreme Court, to annex to the record documents used in evidence, without copying them into the record and having them authenticated as other evidence.

PRACTICE.—*Comparison of Handwriting by Supreme Court.*—Upon a question as to the genuineness of a signature, the Supreme Court can decide nothing by an examination and comparison of signatures.

EVIDENCE.—*Expert.—Testimony by Comparison of Signatures.*—Where the genuineness of a signature is in dispute, a witness who is an expert may have papers conceded to be genuine placed in his hands, and he may compare the genuine signatures with the one in dispute, and from such comparison state whether or not the disputed signature is genuine or simulated.

SAME.—Papers not in evidence in the cause, nor admitted to be genuine, cannot be used in making such comparison.

GRAND JUROR.—*May be a Witness.*—The oath of grand jurors does not prevent the public or an individual from proving by one of the jurors, in a court of justice, what passed before the grand jury.

EVIDENCE.—*Witness.*—*Cross-Examination.*—*Impeachment.*—A witness testifying on the trial of a cause may, for purposes of impeachment, be asked, on cross-examination, whether he did not at a certain time and place testify before the grand jury, and there make statements different from his present testimony.

From the Marion Common Pleas.

*E. H. Lamme* and *R. O. Hawkins,* for appellant.

*J. Hanna* and *F. Knefler,* for appellees.

DOWNEY, C. J.—The appellant sued the appellees, and there was judgment against him. The facts of the case are these: The action was founded upon a promissory note dated December 14th, 1867, maturing June 14th, 1869, for eight hundred and thirty-three dollars and thirty-four cents, executed by one Judson Hale, payable to Jacob Klingensmith, as commissioner appointed by said court to sell certain real estate of one David P. Hunt, deceased, the husband of said Julia A. Hunt. She was the administratrix of his estate, and Klingensmith indorsed the note to her, and has nothing more to do with it. Hale, the maker of the note, secured the payment thereof by mortgage to Julia A. Hunt, as administratrix of her husband's estate, on the same real estate for which the note was given. The appellant, Burdick, obtained the possession of the note from one Burns, claiming to be the agent and attorney of Julia A. Hunt, with an indorsement upon it purporting to be that of Julia A. Hunt, and as holder thereof instituted this action against Hale, the maker, Klingensmith, the payee and first indorser, and the said Julia A. Hunt, praying for judgment against the maker for the amount of the note, and for foreclosure of the mortgage.

Hale answered: 1. A general denial. 2. Denying that there was any consideration for the indorsement of Klingensmith and Julia A. Hunt to the appellant, and that he is the

Burdick *v.* Hunt *et al.*

owner of the note. 3. That before the commencement of this suit Julia A. Hunt, by action of replevin, obtained the possession of the note, and was the holder thereof at the time this suit was instituted, and that the action of replevin was still pending in the Marion Circuit Court.

Julia A. Hunt alleged in an answer and cross complaint, that she was the real and lawful owner of the note and mortgage; that Klingensmith had assigned the note to her, and afterward the maker secured the payment thereof by said mortgage; that what purports to be her indorsement of said note is false and forged; that she never indorsed or assigned said note or authorized any one else to do so; that she is still the real owner of said note, and prayed judgment against said Hale, and for the foreclosure of said mortgage. This answer and cross complaint were verified by the oath of Julia A. Hunt. A demurrer was sustained to the third paragraph of the answer of Hale, and there was a reply by general denial to the second paragraph, and also to the answer and cross complaint of Julia A. Hunt. Klingensmith filed a pleading disclaiming any interest in the note. The case being thus at issue, the material question was, whether or not Julia A. Hunt had indorsed the note or authorized it to be done. A trial by jury resulted in a verdict for the said Julia A. Hunt, and after a motion for a new trial was made and overruled, there was final judgment for her on her answer and cross complaint.

The assignment of error is peculiar in form, but we understand it to amount to a general assignment that the court erred in overruling the motion for a new trial. It can amount to no more than that.

It may be as well remarked here as elsewhere in this opinion, that in addition to the original note, with the indorsements upon it, there are numerous other original documents appended to the case. It is claimed that the name of Julia A. Hunt was indorsed on the note by her daughter, and that her name was signed to or indorsed upon the other documents by the same person. Counsel have agreed in writing, "in order more effectually to present the document-

ary evidence in the case to the Supreme Court, that the clerk of said common pleas court, in making a complete record of the case for the Supreme Court, may annex the said documentary evidence, consisting of papers marked from A. to M. inclusive, to said complete record, without copying them into said record, but referring to them by their letter as marked." This practice is wholly irregular and inadmissible. There is a bill of exceptions in the record, to which we must look for the facts relating to what occurred at the trial. We can decide nothing upon an examination of the signatures in question. Whether the name on the note was the signature of Julia A. Hunt or not was a question for the jury that tried the case in the common pleas. Whatever evidence was introduced or offered and rejected in that court must regularly have gone into the bill of exceptions, and come before this court by a copy of the bill of exceptions contained in the record. These documents are in no way authenticated or identified as the documents referred to in the agreement of counsel, except as they contain upon them a letter of the alphabet as indicated in the agreement. There is no mention made of them in the certificate to the transcript or in any other certificate. We cannot regard them, for any purpose, as a part of the record. We think, however, that the questions which are presented and relied upon by counsel for the appellant are so presented by the regular bill of exceptions, that they may be considered and passed upon by us. They are with reference to the refusal of the court to allow certain witnesses produced by the plaintiff to express an opinion formed by a comparison of the signature on the back of the note with the signature to certain other papers which were produced, and in refusing to require the daughter of the said Julia A. Hunt to answer as to what she had testified before the grand jury.

William Wallace, having been sworn, testified that he had been clerk and deputy clerk for ten years, a practising lawyer, skilled in and acquainted with handwritings, and used to comparing the same, but not having seen Julia A. Hunt or

her daughter write, nor having had any business correspondence with them, was shown certain papers upon which was the genuine signature of Julia A. Hunt, as written by her daughter, and then asked to compare said genuine signatures with the disputed signature on the back of the note sued on, and from such comparison to state whether or not the disputed signature was genuine or simulated. To this interrogatory the defendants objected, on the ground that it was not competent to prove the genuineness of the disputed signature by mere comparison with a signature admitted or proved to be genuine, the witness having no previous knowledge of the handwriting of the person. This objection was sustained by the court.

William C. Smock, and also certain other witnesses, being the clerk of the court and deputies employed in his office, having been sworn, produced certain papers with the signature of Julia A. Hunt thereto from the files of the office, which had been received and filed in the course of business, and acted upon as genuine, and were each in succession asked to take those papers and compare the signatures thereon with the signature on the back of the note, and state whether or not the latter was made by the same person as the former, and whether the latter and former were genuine. The same objection was made to this question when asked of each of said witnesses as was made to the question asked of Wallace, and the ruling on it was the same.

These rulings were stated as reasons for a new trial.

There is scarcely any question in the law of evidence concerning which there is greater diversity in the opinion of courts than there is with reference to the admissibility of evidence, by comparison of handwritings, in order to prove the genuineness of a disputed signature. To attempt to derive any uniform rule from the decisions of the courts of the states of the Union would be a fruitless labor. Certain rules on the subject of the proof of handwriting may be gath-

ered from our own decisions and other sources, which may serve the purposes of the present inquiry.

1. When the witness has seen the party write, and has thus become acquainted with his handwriting, he is competent to testify, and this although he has seen him write on but one occasion, and then only his signature.  2 Stark. Ev. 652; 1 Greenl. Ev., sec. 577.  The weight of the evidence is for the court or jury.

2. Where the witness has acquired a knowledge of the handwriting of the party by correspondence with him, or from having seen letters, bills, or other documents afterward admitted by the party to the witness to be genuine, or where such letters, bills, or other documents have been acted upon by the witness as his, the party having known and acquiesced in such acts founded upon their supposed genuineness, or by such adoption of them into the ordinary business transactions of life, as induces a reasonable presumption of their being his own writing.  1 Greenl. Ev., sec. 577; *Chance* v. *The Indianapolis, etc., Gravel Road Co.,* 32 Ind. 472.  In the cases which we have thus far stated, the witness testifies from the knowledge of the handwriting of the party which he has, in some of the modes indicated, previously acquired.  There is not in these cases in any proper sense a comparison of handwritings.  By a comparison is meant an actual production and comparison of two or more instruments or signatures, as a means of ascertaining whether they were written by the same person.  It may be true, as stated by Prof. Greenleaf, that all evidence of handwriting, except when the witness saw the document written, is, in its nature, comparison.  But this is not the meaning of the word in its strict and proper sense.

With reference to evidence by comparison of handwritings, it was decided by this court, in *Clark* v. *Wyatt,* 15 Ind. 271, that it was not admissible, even where the comparison was sought to be made between the disputed signature and signatures to other instruments conceded to be genuine. The court said, in general terms, that the settled rule in

Burdick *v.* Hunt *et al.*

England was, that evidence founded on a mere comparison of hands, by witnesses, would not be allowed, and the court in that case adopted and followed this general rule. The court also held in that case, that witnesses could not testify from a mere comparison of the disputed signature with the signature of the party to two affidavits filed by him in the cause. But in *Chance* v. *The Indianapolis, etc., Gravel Road Co., supra,* the court said that the general rule is not correctly stated in *Clark* v. *Wyatt, supra.* The court further said : " While it is true, that a witness who is not an expert must speak from his knowledge of having seen the party write, or from authentic papers derived in the course of business, it is equally true, that an expert may give his opinion from mere comparison." The court laid down rules by which such evidence may be admitted in two classes of cases ; first, when there are other papers already in evidence in the cause, admitted to be genuine, in which case the jury may make the comparison, either with or without the aid of experts ; and, second, where the other writings which are produced are admitted to be genuine, there being no dispute as to their authenticity. Prof. Greenleaf, after reviewing the cases, says : " If it were possible to extract from the conflicting judgments a rule, which would find support from the majority of them, perhaps it would be found not to extend beyond this : that such papers can be offered in evidence to the jury, only when no collateral issue can be raised concerning them ; which is only where the papers are either conceded to be genuine, or are such as the other party is estopped to deny ; or are papers belonging to the witness, who was himself previously acquainted with the party's handwriting, and who exhibits them in confirmation and explanation of his own testimony." 1 Greenl. Ev., sec. 581.

It appears that the papers placed in the hands of Wallace were papers conceded to be genuine, and he was asked, as an expert, to compare the genuine signatures with the disputed signature on the note sued on, and from such comparison to state whether or not the disputed signature was

genuine or simulated. This question he was not allowed to answer. According to the rules as laid down in the case of *Chance* v. *The Indianapolis, etc., Gravel Road Co., supra,* this examination should have been allowed. We think we should follow that case rather than go back to the rule in *Clark* v. *Wyatt.*

As Smock and the other witnesses were offered as experts, to compare papers not in evidence in the cause, nor admitted to be genuine, with the disputed signature, and express an opinion founded upon such comparison, the rules laid down in the case in 32 Ind. required that their testimony should be excluded, and we conclude that the court committed no error in its exclusion.

The next question in the case is this: The daughter of Julia A. Hunt, who acted as the amanuensis of her mother in signing her name, who, it was contended, had signed her mother's name on the back of the note in question, was examined as a witness in this case, and denied having written the name upon the note. She was asked, on cross-examination, whether she had not been a witness against said Burns, who had been the attorney of her mother before the grand jury, and answered that she had been such witness before the grand jury, in the Marion Criminal Court, at the court-house in Indianapolis, in December, 1868. Thereupon the appellant, by his counsel asked her the following question: "Did you not state at the time and place and before the grand jury then, that you indorsed this note by the direction of your mother, and that she gave it to Burns?" This question was objected to by the defendants, on the ground that it was not a competent cross-examination, and was not competent as laying the foundation to contradict her by any of the grand jury, and because the evidence given before the grand jury was secret and could not be divulged either by the witness or by any member of the grand jury, and that it was not competent to inquire as to what transpired before the grand jury. The court sustained the objection. This ruling was stated as a reason for a new trial.

As to the first ground of objection to this cross-examination, that is, that it was not relevant to the examination in chief, and therefore not a proper cross-examination, we think the objection is not well founded. The witness testified in chief that she did not indorse her mother's name on the note. It was competent to interrogate her as to statements made by her contrary to what she testified to on the trial, and to impeach her by proving such statements if she denied them, unless the fact that such statements were made before the grand jury changes the rule. Counsel for appellees base their objection to this cross-examination, merely on the ground that the statement having been made before the grand jury cannot be inquired into, nor can any grand juror testify to it. It has been more than once decided by this court that the oath of grand jurors to keep their proceedings secret does not prevent the public or an individual from proving by one of the jurors, in a court of justice, what passed before the grand jury. *Burnham* v. *Hatfield*, 5 Blackf. 21; *Shattuck* v. *The State*, 11 Ind. 473. But it is urged that, whatever may have been the rule before, since the legislature prescribed the form of oath which shall be administered to grand jurors, they cannot so testify. The part of the oath in question is this: "That you will not disclose any evidence given, or proceeding had before the grand jury." 2 G. & H. 387, form 56. The case in 11 Ind. was decided long after the enactment of this form by the legislature. But aside from this, we think it cannot be supposed that the legislature intended to change the rule which had before existed. As thus understood the grand jurors are required to keep secret the evidence given and proceedings had before them, unless legally called upon in a court of justice to make disclosures. In our opinion the cross-examination was material and competent.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.